IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

LORENNA MARIE DAVILA, o/b/o
J.A.L.

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C15-4231

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

I.    INTRODUCTION .................................... 2

II.   PROCEDURAL BACKGROUND ......................... 2

III.  PRINCIPLES OF REVIEW ............................. 3

IV.  FACTS ............................................ 4
    A.    J.A.L.'s Educational Background ..................... 4
    B.    Medical Evidence Pertinent to Objections Raised by Davila ....... 6

V.    CONCLUSIONS OF LAW .............................. 7
    A.    ALJ's Disability Determination ....................... 7
    B.    Objections Raised By Claimant ....................... 9
        1.    Dr. Idahosa's Opinions ....................... 9
        2.    Paul Koson's Opinions ...................... 12
        3.    Fully and Fairly Developed Record .............. 14
    C.    Reversal or Remand .............................. 15

VI.  CONCLUSION ..................................... 16

VII. RECOMMENDATION ................................ 16

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Lorena Marie Davila on behalf of her minor son, J.A.L., requesting judicial review of the Social Security Commissioner's decision to deny an application for Title XVI supplemental security income ("SSI") benefits for J.A.L. Davila asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide SSI benefits for J.A.L. In the alternative, Davila requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On April 17, 2012, Davila filed an application for SSI benefits on behalf of her minor son, J.A.L., alleging disability due to ADHD, bipolar disorder, and conduct disorder.[1] Davila alleged J.A.L. became disabled on January 1, 2007.[2] The application was denied upon initial review, and on reconsideration. On February 20, 2014, Davila and J.A.L. appeared via video conference with their attorney before Administrative Law Judge ("ALJ") Alison K. Brookins for an administrative hearing. In a decision dated June 6, 2014, the ALJ denied J.A.L.'s claim. The ALJ determined J.A.L. was not disabled as defined in the Social Security Act, and not entitled to SSI benefits. Davila appealed the ALJ's decision. On September 28, 2015, the Appeals Council denied Davila's request for review. Consequently, the ALJ's June 6, 2014 decision was adopted as the Commissioner's final decision.

On November 10, 2015, Davila, on behalf of J.A.L., filed the instant action for judicial review. A briefing schedule was entered on January 14, 2016. On April 13, 2016, Davila filed a brief arguing there is not substantial evidence in the record to support

---

[1] March 26, 2012 is the protective filing date.

[2] SSI benefits, however, are not payable prior to the month in which the application was filed. *See* 20 C.F.R. § 416.335. Therefore, the relevant time period in this case began on March 26, 2012, the date Davila protectively filed J.A.L.'s application for SSI benefits.

2

the ALJ's finding that J.A.L. is not disabled. On May 13, 2016, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On May 18, 2016, Davila filed a reply brief. On May 19, 2016, Judge Leonard T. Strand referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Additionally, on March 24, 2016, both parties together filed a joint statement of facts addressing the case's procedural history, testimony from the administrative hearing, and J.A.L.'s education and medical history. *See* docket number 12. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of this matter.

### *III. PRINCIPLES OF REVIEW*

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the

ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. J.A.L.'s Educational Background

J.A.L. was born in 2005.

On April 23, 2012, J.A.L.'s kindergarten teacher, Debra Wilcox, filled out a Social Security "Teacher Questionnaire" for J.A.L. Wilcox reported J.A.L. could read, write, and perform math at grade level. Wilcox also checked boxes providing that J.A.L. had

"No" problems with acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself. Wilcox's only comment was J.A.L. "does well when given his ADHD meds."[3]

On September 21, 2012, J.A.L.'s first grade teacher, Ms. Maurer, filled out a Social Security "Teacher Questionnaire" for J.A.L. At the time Maurer filled out the questionnaire, she had known J.A.L. for approximately five weeks. Maurer reported J.A.L. could read above grade level, and write and perform math at grade level. Maurer also checked boxes providing that J.A.L. had "No" problems with acquiring and using information, moving about and manipulating objects, and caring for himself. Maurer noted "slight" problems with attending and completing tasks. Maurer further noted "slight" and "obvious" problems with interacting and relating to others. Maurer indicated J.A.L. "exhibits a lack of self control[,]" but "is not aggressive or mean."[4] Maurer found that J.A.L. could be verbally disruptive and talk excessively during class.

On March 14, 2014, J.A.L.'s second grade teacher, Lisa Myers, filled out a Social Security "Teacher Questionnaire" for J.A.L. At the time Myers filled out the questionnaire, she had known J.A.L. for approximately 2.5 months. Myers reported J.A.L. could read, write, and perform math at grade level. Myers also checked boxes providing that J.A.L. had "No" problems with acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself.

---

[3] Administrative Record at 158.

[4] Administrative Record at 207.

### B. *Medical Evidence Pertinent to Objections Raised by Davila*

On February 11, 2014, J.A.L.'s treating psychiatrist, Dr. Ejiro Idahosa, M.D., filled out a "Treating Source Statement" for J.A.L. In the statement, Dr. Idahosa addressed Listing § 112.04 for mood disorders. Dr. Idahosa diagnosed J.A.L. with two mood disorders: manic syndrome characterized by elevated, expansive, or irritable mood, and bipolar disorder. J.A.L.'s symptoms for manic syndrome included increased activity and psychomotor agitation, decreased need for sleep, easy distractibility, and involvement in activities with high potential of painful consequences which are not recognized. Dr. Idahosa indicated J.A.L.'s bipolar disorder is characterized by marked impairment in age-appropriate social functioning and deficiencies in concentration, persistence, and/or pace resulting in frequent failure to complete tasks in a timely manner. In the statement, Dr. Idahosa also addressed Listing § 112.11 for ADHD. Dr. Idahosa opined J.A.L.'s ADHD is characterized by marked inattention, marked impulsiveness, and marked hyperactivity. Similar to J.A.L.'s diagnosis of bipolar disorder, J.A.L.'s diagnosis of ADHD includes marked impairment in age-appropriate social functioning and deficiencies in concentration, persistence, and/or pace resulting in frequent failure to complete tasks in a timely manner.

On February 24, 2014, Paul Koson, J.A.L.'s treating behavioral counselor, filled out a "Treating Source Statement" for J.A.L. In the statement, Koson addressed Listing § 112.04 for mood disorders. Koson diagnosed J.A.L. with major depressive disorder, manic syndrome, and bipolar disorder. Koson identified the following symptoms of J.A.L.'s depressive disorder: depressed or irritable mood, markedly diminished interest in most activities, sleep disturbance, fatigue, feelings of worthlessness and guilt, and difficulty thinking and concentrating. J.A.L.'s symptoms for manic syndrome included increased activity or psychomotor agitation, decreased need for sleep, easy distractibility, inflated self-esteem or grandiosity, and involvement in activities with high potential of painful consequences which are not recognized. Koson reported J.A.L.'s diagnosis of

bipolar disorder is characterized by marked impairment in age-appropriate social functioning and deficiencies in concentration, persistence, and/or pace resulting in frequent failure to complete tasks in a timely manner.

Koson also addressed Listing § 112.06 for anxiety disorders. Koson opined J.A.L.'s diagnosis of anxiety disorder manifests itself with excessive anxiety when J.A.L. is separated from a parent, and excessive worry accompanied by hyperactivity. Koson found J.A.L.'s anxiety is also characterized by marked impairment in age-appropriate social functioning and deficiencies in concentration, persistence, and/or pace resulting in frequent failure to complete tasks in a timely manner.

Lastly, Koson addressed Listing § 112.11 for ADHD. Koson reported J.A.L.'s ADHD is characterized by marked inattention, marked impulsiveness, and marked hyperactivity. Additionally, J.A.L.'s diagnosis of ADHD includes marked impairment in age-appropriate social functioning and deficiencies in concentration, persistence, and/or pace resulting in frequent failure to complete tasks in a timely manner.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined J.A.L. is not disabled. In making this determination, the ALJ was required to complete the three-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.924; *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718 (8th Cir. 2005); *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853 (8th Cir. 2003). In *Moore*, the Eighth Circuit Court of Appeals explained the three-step sequential test as follows:

> At the first step, the [ALJ] determines whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). At the second step, an ALJ determines whether the child has an impairment that is "severe." 20 C.F.R. § 416.924(c). At the third step, an ALJ determines whether the child's impairment is medically or functionally equivalent in severity to the impairments listed in the disability

7.

regulations. 20 C.F.R. § 416.924(d); 20 C.F.R. pt. 404, subpt. P, app. 1.

*Moore*, 413 F.3d at 721. At step two, "if the impairments result in no more than minimal functional limitations, the impairments are not severe and the child is not disabled." *Pepper*, 342 F.3d at 854. Under step three, "a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment." *Id.* (citing 20 C.F.R. § 416.926(a)). The Social Security Regulations provide that a child's impairments may also functionally equal a listed impairment under certain circumstances. *See* 20 C.F.R. § 416.926a(a). An impairment is functionally equal to a listed impairment, "if there is an 'extreme' limitation in one of six specific functional domains, or a 'marked' limitation in at least two domains." *Pepper*, 342 F.3d at 854; 20 C.F.R. § 416.926a(a). The domains to be considered by the ALJ are: acquiring and using information, attending and completing tasks, interacting and relating with others, moving around and manipulating objects, caring for oneself, and health and physical well being. *See* 20 C.F.R. § 416.926a(a)(1)(i)-(vi).

The ALJ applied the first step of the analysis and determined J.A.L. had not engaged in substantial gainful activity since the date his application for SSI benefits was filed.[5] At the second step, the ALJ concluded from the medical evidence J.A.L. had the following severe combination of impairments: ADHD and bipolar disorder, type I. At the third step, the ALJ found J.A.L. did not have an impairment or combination of impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Also at the third step, the ALJ determined J.A.L. did not have an impairment or combination of impairments that functionally equaled the listings. Therefore, the ALJ concluded J.A.L. was not disabled.

---

[5] The ALJ noted J.A.L. "was born on September [], 2005. Therefore, he was a school-age child on March 31, 2012, the date [the] application was filed, and is currently a school-age child." Administrative Record at 17.

8

## B. Objections Raised By Claimant

Davila argues the ALJ erred in two respects. First, Davila argues the ALJ failed to properly consider and weigh the opinions of Dr. Idahosa and Paul Koson, both treating sources. Second, Davila argues, in light of the ALJ's alleged failure to properly address the opinions of Dr. Idahosa and Koson, the ALJ also failed to properly evaluate, or even address whether J.A.L. meets or equals the Listings. Davila concludes the ALJ's decision is not supported by substantial evidence; and therefore, the ALJ's decision should be reversed.

### 1. Dr. Idahosa's Opinions

Davila argues the ALJ failed to properly evaluate and weigh the opinions of J.A.L.'s treating psychiatrist, Dr. Idahosa. Specifically, Davila argues the ALJ failed to explain her reasons for granting less weight to Dr. Idahosa's opinions than to the opinions of non-treating (non-examining consultative doctors) and non-medical sources (opinions of J.A.L.'s teachers). Davila concludes this matter should be remanded for further consideration of Dr. Idahosa's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the

ALJ can accord it less weight.' *Id.*"). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In her decision, the ALJ addresses Dr. Idahosa's opinions as follows:

> Dr. []Idahosa completed a form in February 2014 at the request of counsel indicating that [J.A.L.] met the medical criteria of bipolar disorder and ADHD with marked limitation of function (Exhibit 13F). However, this is given little weight as it is not consistent with the treatment records. The doctor has reported that the claimant has done well with medication. Treatment records in October 2013 and November 2013

10

     indicated GAF scores of 55 indicative of moderate limitations, not marked limitations.

(Administrative Record at 21.)

  In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 41.927(c)(2).

  The Court finds that the ALJ has not fully met these requirements with regard to the opinions of Dr. Idahosa. First, Dr. Idahosa's opinions regarding J.A.L.'s mood disorders and ADHD are consistent with the opinions of Paul Koson, J.A.L.'s treating counselor.[6] Second, the ALJ does not fully explain her reasons for finding Dr. Idahosa's opinions inconsistent with treatment records, or fully address the totality of Dr. Idahosa's treatment records. For example, while the ALJ notes J.A.L. did "well" with medication and twice had GAF scores of 55, the ALJ does not address Dr. Idahosa's finding that J.A.L.'s behavior gets progressively worse throughout the day and into the evening as J.A.L.'s medications wear off.[7] Third, Dr. Idahosa's treatment notes are consistent in describing J.A.L.'s mood disorder symptoms with his treating source statement.[8] Fourth, Dr. Idahosa met with J.A.L. monthly to check and adjust his medications so that he could function well at school.

---

[6] *Compare* Administrative Record at 451-54 (Dr. Idahosa's Treating Source Statement) with Administrative Record at 473-75 (Paul Koson's Treating Source Statement).

[7] *See* Administrative Record at 445.

[8] *Compare* Administrative Record at 439 (Treatment Note) with Administrative Record at 451-52 (Treating Source Statement).

11

Under such circumstances, and having reviewed the entire record, the Court concludes the ALJ failed to give "good reasons" for rejecting the opinions of Dr. Idahosa. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in her duty to fully and fairly develop the record with regard to Dr. Idahosa's opinions. Accordingly, the Court recommends that this matter should be remanded for further consideration of Dr. Idahosa's opinions. On remand, the ALJ should provide clear reasons for accepting or rejecting Dr. Idahosa's opinions and support her reasons with evidence from the record.

### 2. *Paul Koson's Opinions*

As a behavioral counselor, Paul Koson is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Koson is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a behavioral counselor, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

12

In his decision, the ALJ addressed Koson's opinions as follows:

> Paul Koson, BA also completed a form in February 2014 at the request of counsel indicating that [J.A.L.] met the medical criteria of mood disorder and ADHD with marked limitation of function (Exhibit 16F). This is also given little weight as it is not consistent with the treatment records. It is also not from an acceptable medical source. However, this opinion has been considered along with all the other evidence.

(Administrative Record at 21.)

Having reviewed the entire record, the Court finds that the ALJ failed to meet the requirements of SSR 06-03p as they pertain to the opinions of Koson, a treating counselor for J.A.L. Similar to the Court's discussion of Dr. Idahosa's opinions in section *V.B.1* of this report, the ALJ does not fully explain her reasons for finding Dr. Idahosa's opinions inconsistent with treatment records. In fact, the ALJ gives no reasons for finding Koson's opinions inconsistent with treatment records. Contrary to the ALJ's conclusion, Koson's opinions are consistent with medical evidence in the record. For example, the symptoms articulated by Koson for J.A.L.'s mood disorders and ADHD are consistent with the findings of a colleague who examined J.A.L.[9] Moreover, Koson's opinions are consistent with Dr. Idahosa's findings.[10]

Accordingly, the Court finds that the ALJ failed to properly address Koson's opinions. The Court further finds that the ALJ failed in her duty to fully and fairly develop the record with regard to Koson's opinions. *See Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to fully and fairly develop the record). Accordingly, the Court recommends this matter should be remanded for further consideration of Koson's opinions. On remand, the ALJ should provide clear reasons for accepting or rejecting Koson's opinions and support her reasons with evidence from the record.

---

[9] *See* Administrative Record at 458-59.

[10] *See* Footnote 5.

### 3. *Fully and Fairly Developed Record*

Davila argues the ALJ failed to properly consider and discuss whether J.A.L. meets or equals the Listings. Davila points out that two treating sources, Dr. Idahosa and Paul Koson, both opined J.A.L. met Listings §§ 112.04 and 112.11 for mood disorders and ADHD. Davila concludes remand is necessary because the ALJ failed to fully and fairly develop the record on this issue; and therefore, the ALJ's ultimate disability determination is not supported by substantial evidence.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Here, the Commissioner "acknowledges that the ALJ should have provided an express discussion of her finding that J.A.L. did not meet or medically equal either listing."[11] Moreover, in her decision, the ALJ offered little to no discussion of Dr. Idahosa's and Koson's opinions that J.A.L. did meet the listings for mood disorder (§ 112.04) and ADHD (§ 112.11). Because the Court determined in sections *V.B.1* and *2* of this recommendation that remand is necessary for further consideration of Dr. Idahosa's and Koson's opinions, the Court believes remand is also necessary to allow the ALJ to fully and fairly develop the record and completely address whether J.A.L. meets or equals

---

[11] Commissioner's Brief (docket number 14) at 12.

Listings §§ 112.04 and 112.11. *See Cox*, 495 F.3d at 618. On remand, the ALJ should also include discussion of Dr. Idahosa's and Koson's opinions that J.A.L. meets Listings §§ 112.04 and 112.11.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) properly evaluate the opinions of treating sources Dr. Idahosa and Paul Koson, and (2) fully and fairly develop the record with regard to whether J.A.L. meets or equals Listings §§ 112.04 and 112.11.

## VI. CONCLUSION

I recommend that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ should provide clear reasons for accepting or rejecting Dr. Idahosa's opinions and support her reasons with evidence from the record. Similarly, the ALJ should also provide clear reasons for accepting or rejecting Paul Koson's opinions and support her reasons with evidence from the record. Lastly, the ALJ should both fully and fairly develop the record as to whether J.A.L. meets or equals Listings §§ 112.04 and 112.11, and include discussion of Dr. Idahosa's and Koson's opinions on that issue.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **REVERSE** and **REMAND** this matter to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 14th day of September, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA